United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL CROSTHWAITE and RUSS BURNS, in their respective capacities as Trustees of the OPERATING ENGINEERS' HEALTH AND WELFARE TRUST FUND, PENSION TRUST FUND FOR OPERATING ENGINEERS, PENSIONED OPERATING ENGINEERS' HEALTH AND WELFARE FUND, OPERATING ENGINEERS AND PARTICIPATING EMPLOYERS PRE-APPRENTICESHIP, APPRENTICE AND JOURNEYMEN AFFIRMATIVE ACTION TRAINING FUND, HEAVY AND HIGHWAY COMMITTEE, and OPERATING ENGINEERS LOCAL 3, <br><br> Plaintiffs, <br><br> v. <br><br> SANCHEZ GRADING, a California Corporation, and LEO SANCHEZ, an Individual, <br><br> Defendants. | No. C 09-01386 WHA <br><br><br><br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

**INTRODUCTION**

In this action under the Employee Retirement Income Security Act, plaintiffs Gil Crosthwaite, Russ Burns, Operating Engineers' Health and Welfare Trust Fund, Pension Trust Fund for Operating Engineers, Pensioned Operating Engineers' Health and Welfare Fund, Operating Engineers and Participating Employers Pre-Apprenticeship, Apprentice and Journeymen Affirmative Action Training Fund, Heavy and Highway Committee, and Operating

1  Engineers Local 3 move for default judgment against defendants Sanchez Grading and Leo
2  Sanchez. For the following reasons, the motion is **GRANTED.**

**STATEMENT**

The facts alleged by plaintiffs are as follows. Plaintiffs Operating Engineers' Health and Welfare Trust Fund, Pension Trust Fund for Operating Engineers, Pensioned Operating Engineers' Health and Welfare Fund, Operating Engineers and Participating Employers Pre-Apprenticeship, Apprentice and Journeymen Affirmative Action Training Fund, Heavy and Highway Committee (hereinafter "plaintiff benefit plans") are employee-benefit plans as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs Crosthwaite and Burns are co-chairman of the Joint Boards of Trustees of plaintiff benefit plans and are authorized to act on behalf of all trustees. Operating Engineers Local 3 is a labor organization as defined in the National Labor Relations Act.

On June 1, 2001, defendants Sanchez Grading and Leo Sanchez (the employer) executed a written collective bargaining agreement with the union. This agreement incorporated the terms of several other agreements and required signatory employers to do the following:

  1. Make timely contributions into plaintiff benefit plans at a specified rate per hour worked by, or paid to, all employees performing work covered by the agreement;

  2. Report the number of covered hours worked by, or paid to, each employee covered by the agreement and the amounts owed for that work; and

  3. Allow an audit of their books and records to allow plaintiff benefit plans to determine whether the employer is making full and prompt payment of the required contributions.

In accordance with this agreement, defendants submitted to an audit for the period of January 2005 to December 2006. This audit showed that defendants owed $6,992.95 in unpaid contributions. Due to this delinquency, plaintiff benefit plans assessed $2,080.14 in liquidated damages, $3,433.70 in interest, and $1,199.51 in audit costs, pursuant to the agreement. A subsequent audit showed that defendants owed $2,717.44 in unpaid contributions in August

2

and September 2008. Plaintiff benefit plans assessed $704.28 in liquidated damages and $588.38 in interest for these delinquencies. The agreement also provided for the recovery of attorney's fees and costs in an action to recover unpaid contributions and enforce the terms of the agreement. Plaintiff benefit plans accrued $6,550.50 in attorney's fees and $470.67 in costs.

On March 30, 2009, plaintiffs commenced the instant action. On June 2, plaintiffs filed an amended complaint and served defendants via personal service on June 4. Proof of service was filed on June 22. Defendant failed to answer. At the request of plaintiffs, the clerk entered default against defendants on June 30.

Plaintiffs now move for default judgment against defendants (Dkt. No. 24) and request a judgment granting plaintiffs the following relief:

1. $9,710.39 in unpaid contributions;
2. $2,784.42 in liquidated damages;
3. $4,022.08 in interest;
4. $1,199.51 in audit costs;
5. $6,550.50 in attorney's fees; and
6. $470.67 in costs.

**ANALYSIS**

Under FRCP 55(b)(2), a party can apply to the court for entry of judgment by default. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the following factors are considered:

> (1) [T]he possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). For the following reasons, these factors favor granting default judgment.

3

1.  **MERITS OF SUBSTANTIVE CLAIMS AND SUFFICIENCY OF THE COMPLAINT.**

After the entry of default, all well-pleaded factual allegations in the complaint are taken as true, except as to the amounts of damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The merits of plaintiff's substantive claims and the sufficiency of the complaint are thus considered together.

The terms of the collective bargaining agreement are controlling. With regards to delinquent payments, ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. 1145. The Ninth Circuit has read Section 1145 as creating a federal cause of action against employers who do not make timely contributions as required under a collective bargaining agreement, such as the one involved in this action. *See*, *e.g.*, *Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776–77 (9th Cir. 2009). Moreover, when damages are "certain," as in this case where covered work has been performed and the only question is the amount of contribution due, the burden is on the employer to prove that the plaintiff's damage estimate is incorrect. *Motion Picture Industry Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1065–67 (9th Cir. 2001). In other words, the determination regarding the amount due is to be construed in favor of the benefit plans.

As explained, contributions that defendants owed under Section 1145 are delinquent. The damages that are to be recovered by the benefit plans in such an action are set forth in 29 U.S.C. 1132(g)(2):

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of —

4

>> (i)  interest on the unpaid contributions, or
>
> (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)  reasonable attorneys fees and costs of the action, to be paid by the defendant, and
>
> (E)  such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

The Ninth Circuit has interpreted Section 1132(g)(2) to mean that, when an employer is found liable for delinquent contributions, an award of the unpaid contributions, interest, liquidated damages, and reasonable attorney's fees and costs is mandatory. *See Northwest Adm'rs, Inc., v. Albertson's, Inc.*, 104 F.3d 253, 257–58 (9th Cir. 1996); *Teamsters Pension Trust Fund-Board of Trustees of the Western Conference v. Allyn Transp. Co.*, 832 F.2d 502, 507 (9th Cir. 1987).

In short, plaintiffs' complaint sufficiently states a meritorious cause of action for breach of fiduciary duty under ERISA.

### 2. REMAINDER OF THE *EITEL* FACTORS.

The remainder of the *Eitel* factors favor entering default judgment in favor of plaintiffs. If this motion is not granted, plaintiffs will be left without a remedy or a means to prevent defendants' continued delinquency. Defendants never answered or otherwise responded to the complaint, so it is unclear whether there would be any dispute over material facts. There is no evidence that defendants' failure to respond was the result of excusable neglect.

It is true that a large sum of money at stake would disfavor default judgment. *See Eitel*, 782 F.2d at 1472 (stating that a three million dollar judgment at stake, considered in light of the parties' dispute as to material facts, supported the court's decision not to enter default judgment). At present, plaintiffs request a default judgment against defendants in the amount of $24,737.57.

5

The requested amount is reasonable considering the liquidated damages and interest mandated by Section 1132(g)(2).

Finally, although federal policy does favor a decision on the merits, Rule 55(b) allows entry of default judgment in situations such as this, where the defendant has refused to litigate. On balance, the *Eitel* factors weigh in favor of granting default judgment.

### 3. DETERMINATION OF RELIEF.

Plaintiff seeks a judgment granting the following relief: (1) $9,710.39 in unpaid contributions; (2) 2,784.42 in liquidated damages; (3) $4,022.08 in interest; (4) $1,199.51 in audit costs; (5) $6,550.50 in attorney's fees; and (6) $470.67 in costs.

#### A. Unpaid Contributions.

As stated above, the Ninth Circuit has held that when an employer is found liable for delinquent contributions, an award of the unpaid contributions, interest, liquidated damages, and reasonable attorney's fees and costs is mandatory, pursuant to Section 1132(g)(2). *Northwest Adm'rs*, 104 F.3d at 257–58; *Teamsters Pension Trust Fund*, 832 F.2d at 507. The audit performed revealed that defendants owed $6,992.95 in unpaid contributions in January 2005 to December 2006 . A subsequent audit revealed that defendants owed $2,717.44 in unpaid contributions in August and September 2008. Therefore, plaintiffs' request for $9,710.39 in unpaid contributions is hereby **GRANTED**.

#### B. Liquidated Damages and Interest.

Section 1132(g)(2) provides that liquidated damages and interest are recoverable. *First*, liquidated damages may not exceed "20 percent (or such higher percentage as may be permitted under Federal or State law)" of unpaid contributions. 29 U.S.C. 1132(g)(2)(C)(ii). The collective bargaining agreement provided a rate of 15 percent for liquidated damages (McBride Decl. Exh. C at 5). *Second*, interest on unpaid contributions must be calculated "by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. 1132(g)(2). The collective bargaining agreement provided an interest rate of 12 percent per annum (McBride Decl. Exh. C at 5).

6

Plaintiffs seek an award of liquidated damages in the amount of $2,080.14 for January 2005 to December 2006 and $704.28 for August and September 2008 (Br. 3). Plaintiffs also seek an award for interest in the amount of $3,433.70 for January 2005 to December 2006 and $588.38 for August and September 2008 (*ibid.*). Plaintiffs, however, do not specify how the liquidated damages or the interest were calculated — whether under the collective bargaining agreement or some other formula. As a result, this order cannot tell whether the requirements of Section 1132(g)(2) were complied with and therefore, cannot award the requested damages at this time.

Accordingly, plaintiffs' request for liquidated damages in the amount of $2,784.42 and interest in the amount of $4,022.08 is hereby **DENIED**. Plaintiffs may submit a proper explanation of the requested amounts of liquidated damages and interest on the unpaid contributions for January 2005 to December 2006 and August and September 2008 in accordance with Section 1132(g)(2) by **NOON ON FRIDAY, MAY 14, 2010**. Following such a submission, the Court will then determine whether the requested relief is appropriate.

### C. Audit Costs.

The collective bargaining agreement provided that the employer shall pay for reasonable audit costs (McBride Decl. Exh. C at 5). Plaintiffs seek $1,199.51 in audit costs. Plaintiffs have explained the audit costs incurred in this action and why such amounts are reasonable (Bradley Decl. ¶ 5). Therefore, plaintiffs' request for $1,199.51 in audit costs is hereby **GRANTED**.

### D. Attorney's Fees and Costs.

Plaintiffs seek $6,550.50 in attorney's fees and $470.67 in costs. Defendant has failed to appear in this case, and the requested amounts appear reasonable. Plaintiffs have also explained the costs and fees incurred thus far in this action and why such amounts are reasonable (Kaplan Decl. ¶ 10). Therefore, plaintiffs' request for $6,550.50 in attorney's fees and $470.67 in costs is hereby **GRANTED**.

7

**CONCLUSION**

For the forgoing reasons, plaintiffs' motion for default judgment is hereby **GRANTED**. Defendant is hereby **ORDERED** to pay plaintiff $9,710.39 in unpaid contributions, $1,199.51 in audit costs, $6,550.50 in attorney's fees, and $470.67 in costs.

Plaintiffs' request for liquidated damages in the amount of $2,784.42 and interest in the amount of $4,022.08 is hereby **DENIED**. Plaintiffs may submit a proper explanation of the requested amounts of liquidated damages and interest on the unpaid contributions for January 2005 to December 2006 and August and September 2008 in accordance with Section 1132(g)(2) by **NOON ON FRIDAY, MAY 14, 2010**. Following such a submission, the Court will then determine whether the requested relief is appropriate.

**IT IS SO ORDERED.**

Dated: May 6, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE